UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW L.,[1] | ) | |
| | ) | No. 20 CV 1609 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) ) ) | |
| | ) | November 22, 2021 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Andrew L. seeks disability insurance benefits, asserting that he was disabled during childhood by autism and anxiety. Before the court is Andrew's motion for summary judgment. For the following reasons, the motion is granted, and the matter is remanded:

**Procedural History**

In August 2017 Andrew filed an application for child disability benefits, alleging that he had been disabled since May 1, 2009, when he was nine years old. (Administrative Record ("A.R.") 17, 110, 186, 193, 344.) Andrew's application was denied initially and upon reconsideration. (Id. at 92-110, 122.) He then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 17, 123,

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as Defendant in this case.

140-45.) After a hearing in November 2018, at which Andrew appeared along with his mother, his attorney, and a vocational expert, (id. at 31-91), the ALJ concluded in February 2019 that Andrew is not disabled, (id. at 17-26). Thereafter, Andrew filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 8).

## Child Disability Benefits

A child is considered disabled under the Social Security Act if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Because "disabled children generally do not have a work history," their disability claims are considered under a framework that is different from the one used for adults. *Sanchez v. Barnhart,* 467 F.3d 1081, 1082 (7th Cir. 2006); *see also McCavitt v. Kijakazi,* 6 F.4th 692, 693 (7th Cir. 2021). The first two steps are the same in that the ALJ asks whether the child is engaged in substantial gainful activity and whether he has a medically severe impairment or combination of impairments. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019). Next the ALJ asks whether the child's impairment meets, or is medically or functionally equal to, an impairment found in the listings. *See McCavitt*, 6 F.4th at 693 (noting that "functional equivalence" language was deleted by amendment to 42 U.S.C. § 1382(a)(3)(C)(i) but that "it remains in a regulation, 20 C.F.R. § 416.924"). A functional equivalence exists where the ALJ finds that the child has a "marked

limitation[] in two domains of functioning or an extreme limitation in one domain." 20 C.F.R. § 416.926a(a); *see also McCavitt*, 6 F.4th at 693. A marked limitation interferes "seriously"—and an extreme limitation interferes "very seriously"—with a child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)-(3). If the child's impairment does not meet or equal this standard, the ALJ determines the child's residual functional capacity ("RFC"), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). At step four the ALJ decides whether the child can perform any past relevant work and, if not, at step five the ALJ examines whether substantial numbers of jobs in the national economy exist that he may perform. 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

## The ALJ's Decision

The ALJ found at step one that Andrew had not attained age 22 as of May 1, 2009, or engaged in substantial gainful activity since that date. (A.R. 19.) At step two the ALJ determined that Andrew suffered severe impairments of autism and anxiety disorders. (Id. at 20.) The ALJ found at step three that none of Andrew's impairments met or medically equaled an impairment found in the listings. (Id. at 20-21.) The ALJ further determined that Andrew's impairments caused only moderate limitations in understanding, remembering, or applying information and interacting with others and mild limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself. (Id. at 20.)

3

Before turning to step four, the ALJ assessed Andrew as having an RFC "to perform a full range of work at all exertional levels" with nonexertional restrictions limiting him to: work in a moderate noise intensity environment; simple, routine, and repetitive tasks; understanding, remembering, and carrying out simple instructions; adapting to occasional changes in the work setting; and superficially interacting with the public and occasionally with coworkers. (Id. at 21.) At step four the ALJ found that Andrew had no past relevant work, but at step five found that there are significant number of jobs in the national economy he can perform, including laundry worker, hand packager, and dining room attendant. (Id. at 24-25.) As such, the ALJ concluded that Andrew was not disabled from May 1, 2009, through the date of the ALJ's decision in February 2019. (Id. at 25.)

## Analysis

Andrew asserts that the ALJ erred in evaluating statements from nonmedical sources and in assessing his RFC. (R. 15, Pl.'s Br. at 1.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ,

4

allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

## A.   Nonmedical Sources

Andrew argues that the ALJ improperly evaluated statements from vocational rehabilitation specialist Sharon Alifantis-Kickel and his mother. (R. 15, Pl.'s Br. at 8-14.) Alifantis-Kickel served as Andrew's vocational coordinator at Indian Prairie School District in a "self-contained special education" transition program referred to as STEPS. (A.R. 340.) On November 15, 2018,[3] Alifantis-Kickel submitted a statement on Andrew's behalf, explaining that she had worked as a certified rehabilitation counselor for more than 30 years and opining that behaviors she observed relating to Andrew's autism would serve as "barriers to successful long-term employment." (Id.) Specifically, Alifantis-Kickel pointed to Andrew's difficulties with "verbal and non-verbal communication and social interactions," "perspective taking," "frequent[] inflexib[ility]," and "adapt[ing] or manag[ing] his emotions and behavioral responses." (Id.) She concluded that despite "working on 'being less blunt/aggressive,' 'accepting . . . constructive criticism,' and 'maintaining positive relationships'" in STEPS, his "recurring patterns" of behaviors would "significantly impact his ability [to] gain and maintain employment." (Id.)

---

[3] In its review of the ALJ's decision, the Appeals Council noted that Alifantis-Kickel submitted another statement on Andrew's behalf, on September 4, 2019. (A.R. 2.) However, because the ALJ decided Andrew's case through February 22, 2019, the date of her decision, the Appeals Council found that "[t]his additional evidence does not affect the decision" regarding disability benefits for the time period considered by the ALJ. (Id.)

Andrew's mother also completed a third-party function report on October 10, 2017, reporting that Andrew had difficulty with social interactions, completing tasks, following instructions, managing stress, and maintaining focus. (Id. at 205, 210-12.) She testified on Andrew's behalf at the November 2018 hearing, (id. at 64-80), and submitted another statement on December 9, 2018, clarifying her hearing testimony, (id. at 343). In that statement his mother explained that even a simple job would be difficult for Andrew to perform because he requires "constant coaching and monitoring to complete [a simple] task correctly." (Id.) For example, when Andrew helps care for his father, who suffers from Parkinson's disease, Andrew requires "much oversight and coaching" to ensure he completes requested tasks. (Id.)

In her decision the ALJ stated that she considered third-party opinion evidence but chose not to articulate her evaluation of this evidence. (Id. at 24 (citing id. at 205-19, 340, 343, 400-07).) Citing 20 C.F.R. § 404.1520c(d), the ALJ stated that she was "not required to articulate how evidence from nonmedical sources was considered." (Id.) She further explained that, in accordance with 20 C.F.R. § 404.1520b(c), she was not obliged to evaluate evidence that was "inherently neither valuable nor persuasive." (Id.) To support her RFC the ALJ instead relied on "objective medical evidence and persuasive opinions," noting that Andrew had "done well in the STEPS program and with his activities of daily living." (Id.)

Contrary to this statement, however, the ALJ did not find any medical opinion evidence persuasive.[4] (R. 15, Pl.'s Br. at 14-15.)

Andrew argues that the ALJ's decision lacks the support of substantial evidence because she did not provide any analysis or rationale for rejecting nonmedical statements. (Id. at 8-14.) The court agrees with Andrew with respect to the ALJ's treatment of Alifantis-Kickel's and Andrew's mother's statements. Under 20 C.F.R. § 404.1520c, an ALJ is required "to evaluate every medical opinion and evaluate the weight given to the opinion." *Garling v. Kijakazi*, No. 20 CV 369, 2021 WL 3728544, at *5 (N.D. Ind. July 20, 2021). For claims filed on or after March 27, 2017, including Andrew's claim, an ALJ is no longer obligated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including from a claimant's treating physician. 20 C.F.R. § 404.1520c(a). Paragraphs (a) through (c) of Section 1520c require an ALJ to articulate how she considered medical opinions in accordance with the factors set forth in paragraph (c), including supportability, consistency, relationship with claimant, specialization, and other factors. *Id.* § 1520c(a)-(c). Under paragraph (d), however, an ALJ need not "articulate how [she] considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c)." *Id.* § 1520c(d).

Here the ALJ cited paragraph (d) for the purported rule that she was not required to articulate how she considered nonmedical source opinions. (A.R. 24.)

---

[4] The ALJ deemed "unpersuasive" opinions from state agency examiners because "[t]hese clinicians did not examine the claimant and did not have the benefit of the full hearing level record including the most recent records from STEPS or the claimant's hearing testimony." (A.R. 24.)

7

Some courts seem to embrace the ALJ's position, suggesting that Section 1520c(d) no longer requires an ALJ to articulate how she considered evidence from nonmedical sources. *See, e.g.*, *Pamela M. v. Kijakazi*, No. 20 CV 5479, 2021 WL 4461546, at *11 (N.D. Cal. Sept. 29, 2021) (noting that under amended regulations ALJs are "not required to articulate how [they] considered evidence from nonmedical sources") (internal quotations and citations omitted)); *Cole v. Kijakazi*, No. 20 CV 733, 2021 WL 3887463, at *11 (N.D. Ala. Aug. 31, 2021) ("Under the new regulations, an ALJ does not have to explain how she weighed or considered nonmedical evidence."). However, Section 1520c(d) merely states that an ALJ "is not required to articulate how [she] considered evidence from nonmedical sources *using the requirements in paragraphs (a)-(c) of this section.*" *Garling*, 2021 WL 3728544, at *6 (citing 20 C.F.R. § 404.1520c(d) (emphasis added)). The plain language of the regulation therefore does not eliminate the articulation requirement altogether, as the government argues here. *Id.* (finding unpersuasive the argument that section 1520c(d) does not require ALJ to articulate consideration of nonmedical evidence because "that statement does not follow from the applicable law").

Section 1520c provides additional support that an articulation requirement still applies to nonmedical evidence. As Section 1520c's title reflects, the new regulation concerns the treatment of medical—not nonmedical—opinions. *See* 20 C.F.R. § 404.1520c (titled, "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"); *see also* Revs. to Rules Regarding Evaluation of Med. Evid., 82 Fed. Reg. 5,844 (Jan.

8

18, 2017) ("We added regulatory text in final 404.1520c(d) . . . for claims filed on or after March 27, 2017, that there is no requirement to articulate how we considered evidence from nonmedical sources about an individual's functional abilities and limitations *using the rules for considering and articulating our consideration of medical opinions found in final 404.1520c*") (emphasis added). To this end, some courts have required at least minimal articulation of why an ALJ credited or rejected nonmedical evidence submitted in support of disability claims. *See Wright v. Saul*, No. 20 CV 261, 2021 WL 4272888, at *9 (N.D. Ind. Sept. 21, 2021) (finding that while under section 1520c(d) an ALJ need not "articulate how [she] considered evidence from nonmedical sources," she still must "'minimally articulate [her] reasons for crediting or rejecting evidence of disability'" (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *Tanya L. L. v. Comm'r of Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021) (finding that Section 1520c(d) does "not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

This court therefore concludes that Section 1520c requires at least minimal articulation of how nonmedical evidence was considered. While an ALJ's analysis need not be extensive, some articulation is needed to allow the court to meaningfully assess whether the ALJ applied the correct legal standards and supported her decision with substantial evidence. *See Burmester*, 920 F.3d at 510. This is especially true where, as here, the claimant seeks child disability benefits. Indeed, in claims for child disability, nonmedical sources such as a counselor or parent "can provide helpful longitudinal evidence about how an impairment affects

9

[his] functional abilities and limitations on a daily basis." Revs. to Rules Regarding Evaluation of Med. Evid., 82 Fed. Reg. 5,844, 5,850 (Jan. 18, 2017). As such, "particularly in claims for child disability," an "analysis about how [the ALJ] considered evidence from nonmedical sources" may be instructive. *Id.* Here, Alifantis-Kickel and Andrew's mother offered firsthand observations about how Andrew's autism and anxiety disorders affect his ability to work in STEPS and his daily activities. Given the "longitudinal evidence" they offered, the ALJ should have provided at least some analysis as to how she considered this evidence. *See* 20 C.F.R. § 404.1520c(d); Revs. to Rules Regarding Evaluation of Med. Evid., 82 Fed. Reg. 5,844, 5,850 (Jan. 18, 2017). But she did not.

Andrew further argues that 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017), required the ALJ to evaluate nonmedical evidence when assessing his subjective symptom allegations. (R. 15, Pl.'s Br. at 10-13.) Section 1529 directs an ALJ to consider "any description . . . medical sources or nonmedical sources may provide about how the symptoms affect [a claimant's] activities of daily living and . . . ability to work." 20 C.F.R. § 404.1529(a),(c)(3) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the ALJ] will carefully consider . . . information . . . medical sources or nonmedical sources provide about . . . pain or other symptoms."). SSR 16-3p similarly provides that the ALJ will consider information submitted by nonmedical sources, such as "educational personnel" and "family," from which the ALJ "may draw inferences

10

and conclusions" about the claimant's subjective allegations "in assessing the intensity, persistence, and limiting effects of symptoms." 2017 WL 5180304, at *7. Specifically, the ALJ will "consider personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." *Id.*

Under these provisions, the ALJ was required to grapple with Alifantis-Kickel's and the mother's firsthand observations regarding the limiting effects of Andrew's symptoms. The government acknowledges that the ALJ did not do so. (R. 17, Govt.'s Resp. at 10 (stating that the ALJ did not "explicitly discuss[] the details of [Andrew's mother's] and . . . Alifantis-Kickel's statements").) Such error by the ALJ was not harmless. The ALJ did not explain whether Alifantis-Kickel's and the mother's observations were consistent with Andrew's subjective symptom statements, as required by SSR 16-3p. And despite finding that Andrew's RFC was not more limited because he did "well in the STEPS program and with his activities of daily living," (A.R. 24), she did not address Alifantis-Kickel's and the mother's contradictory statements that his symptoms limited his ability to participate in such activities. Because Andrew "may have structured his . . . activities to minimize symptoms to a tolerable level," SSR 16-3p, 2017 WL 5180304, at *9, the ALJ should have confronted nonmedical evidence that appeared to conflict with her conclusions, *see Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). Accordingly, the court remands this matter so that the ALJ may explain her consideration of nonmedical source statements supporting Andrew's disability claim.

**B.     RFC Assessment**

Because the ALJ improperly rejected nonmedical evidence without tracing a path through her analysis, Andrew's RFC must be reassessed on remand. Nevertheless, for the sake of completeness, the court also addresses Andrew's argument that reversal is warranted because the ALJ did not adequately explain her RFC findings. (R. 15, Pl.'s Br. at 14-15.) Andrew asserts that despite the ALJ's statement that she relied on "persuasive opinions" to support her RFC, (A.R. 24), she did not in fact give weight to any medical opinion, thereby leaving an "evidentiary deficit," (R. 15, Pl.'s Br. at 14-15). It is true that the ALJ misspoke when noting that her RFC was supported by "persuasive opinions," even though she deemed the only medical opinions of record from state agency psychologists "unpersuasive." (A.R. 24.) But the ALJ's misstatement does not constitute reversible error. The ALJ has "final responsibility" for assessing a claimant's RFC and "need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021) (internal quotations and citation omitted). The court therefore disagrees with Andrew's claim that the ALJ wrongly "relied only on her own unqualified lay opinion" in assessing his RFC. (R. 18, Pl.'s Reply at 9.)

Andrew also argues that "the record supports numerous additional limitations," and that the ALJ erred by not accounting for those additional restrictions in her RFC. (R. 15, Pl.'s Br. at 15.) "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758

F.3d 850, 857 (7th Cir. 2014). On remand the ALJ must evaluate nonmedical evidence, in addition to other evidence of record, and determine whether such evidence supports additional limitations.

## Conclusion

For the foregoing reasons, Andrew's motion is granted, and the matter is remanded for further proceedings at the administrative level.

                    ENTER:

                    _____
                    **Young B. Kim**
                    **United States Magistrate Judge**